IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | CRIMINAL ACTION |
| v. | : | NO. 08-00236 |
| EDDIE DUPREE, | : | |
| Defendant. | : | |

**MEMORANDUM**

Before the Court is Defendant Eddie Dupree's Motion to Suppress Physical Evidence. Defendant is charged under 18 U.S.C. §§ 922(g)(1) and 924(e) as a convicted felon in possession of a firearm. Defendant moves for suppression of the handgun that was seized by police officers on the grounds that it was obtained in violation of his Fourth Amendment rights.

Defendant's motion is DENIED for the reasons stated of record at the June 19, 2008 hearing on the motion and for the reasons that follow. The Court concludes that there was neither a show of authority by the police officers nor a submission by the Defendant before he attempted to flee. The seizure occurred only after the attempted flight, and the police officers then had reasonable, articulable suspicion to search him and probable cause to arrest him.

**I.  FACTUAL BACKGROUND**

On December 12, 2007, at approximately 12:25 p.m., Philadelphia Police Officer Robert Tavarez and his partner, Matthew McCarthy, received a radio call stating that there was a person with a gun at 13th Street and Erie Avenue, Philadelphia. The dispatcher, who appeared to be relaying a tip from an anonymous tipster, described the suspect as a black male wearing a black

1

jacket and tan pants. The officers drove their marked police vehicle to the intersection, and Officer Tavarez observed two black individuals in the area near the intersection, one of whom, Defendant, was wearing a black jacket and tan pants.

Officer Tavarez pulled the vehicle over to a stop at the west curb of 13th Street as Defendant was walking towards him. As Officer Tavarez was putting his vehicle in park and exiting the vehicle, he said something to the effect of, "Hold up. I need to talk to you for a second," as he got out of the car. Officer Tavarez testified that his tone was not threatening or aggressive and that he did not display his weapon in any manner. This, the court credits. He then placed himself next to a wide gap in a fence towards which Defendant appeared to head.

In response to the officer's above-stated words, Defendant raised his hands about as high as his head, but with his elbows extended, and replied something to the effect, "Ain't nothing going on here." As Defendant raised his elbows and hands, his jacket moved upwards, exposing the handle of a handgun protruding from his right pants pocket. Officer Tavarez immediately recognized it as likely being a Glock weapon, the kind of weapon he himself carried, because of its distinctive grip

At this point, Officer Tavarez was still a few feet from Defendant and had no physical contact with him. Officer Tavarez took a step towards Defendant. Almost immediately after Defendant raised his arms, he lowered them, turned about face, and fled from Officer Tavarez up to and through an alleyway that exited onto a street parallel to 13th Street. After a foot chase, the officers caught up to Defendant and a struggle ensued, during which Defendant initially succeeded in grabbing the butt of the Glock before he was thwarted in his efforts by Officer Tavarez. Once Defendant was subdued, the officers seized from Defendant's right pants pocket a

Glock Model 19 handgun. It was loaded with 15 rounds of ammunition, but no bullet was in the chamber. Defendant, identified as Eddie Dupree, had three prior felony convictions on drug distribution charges, and was placed under arrest on the pending charges.

## II.  DISCUSSION

**A.     The Police Officers Did Not Seize The Defendant Until After The Attempted Flight.**

In order to ascertain whether the seizure was unconstitutional, it must first be determined when the seizure occurred. The time of the seizure is crucial because if it occurred before the attempted flight, the flight cannot be used to create a reasonable suspicion. *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006). A seizure occurs when there is either (a) "a laying on of hands or application of physical force to restrain movement," or (b) submission to "a show of authority." *Id.* (citing *California v. Hodari D.*, 499 U.S. 611, 626 (1991)).

Here, the police officers used physical force to restrain Defendant's movement after his attempted flight. It is undisputed that this constitutes a seizure. Defendant, however, asserts that the seizure occurred earlier, immediately during the initial interaction between the police officers and himself and before his flight. However, because the police officers had no physical contact with Defendant until after he attempted to flee, the Court must address whether there was ever submission by Defendant to a show of police authority before the attempted flight.

**1.     There Was No Show Of Police Authority Before The Attempted Flight.**

Defendant asserts that when Officer Tavarez approached him and said, "Hold up. I need to talk to you for a second," there was a show of authority. The standard for whether an action is

3

a show of authority is "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D.*, 499 U.S. at 628.  Here, a reasonable person in Defendant's situation would not have believed that he was being ordered to restrict his movement.

The officer's actions in stepping towards Defendant and his use of the phrases "hold up" and "I need to talk to you for a second," especially when spoken in an ordinary and non-aggressive manner, do not rise to the level of a show of authority as a matter of law.  In *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), the Supreme Court, recognizing the importance of police questioning as an investigative tool, ruled that police officers are allowed to interact with citizens on a street without it constituting a seizure.  The Court gave examples of circumstances where such interactions would constitute a seizure: "the threatening presence of several police officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*  In the absence of such circumstances, inoffensive contact between police officers and citizens does not amount to a seizure. *Id.*

Here, there were only two officers, neither of whom had his weapon drawn.  Although Officer Tavarez placed himself between Defendant's apparent intended path and a gap in a fence through which Defendant might have attempted to proceed, Defendant had other possible pathways on the 13th Street sidewalk.  His movement, therefore, was not blocked in any meaningful sense.  There was also nothing overtly intimidating or aggressive about the officer's conduct.  Officer Tavarez used an ordinary tone when speaking with Defendant and never insinuated that Defendant would be compelled to speak with him if he did not wish to do so.

Defendant was not told he was about to be arrested. Under the circumstances presented, the court concludes that a reasonable person would have felt that he was free to leave. *See id.*

The facts of this case are distinguishable from those in *United States v. Brown,* 448 F.3d at 245. There, the Third Circuit held that there were facts that demonstrated a clear show of authority. *Id.* In *Brown,* the police stopped a person suspected in an attempted robbery that had occurred just minutes earlier. *Id.* at 242. A police officer told the suspect that the victim was on her way, and that if she did not identify the suspect as the person who attempted to rob her, he would be free to go. *Id.* at 243. The officer also "demanded" to pat the suspect down. *Id.* The court held that when the police officer told the suspect that he would be free to go only if the witness did not identify him, it necessarily implied that he was not free to go until the witness arrived. *Id.* at 245. In the present case, there was no indication, explicit or implicit, that Defendant was not free to leave when Officer Tavarez first approached him. Hence, there was no show of police authority before the Defendant attempted to flee.

    **2.**    **Defendant Did Not Submit Before The Attempted Flight.**

Even if Officer Tavarez's conduct during the initial interaction with Defendant did rise to the level of a show of authority, it still would not constitute a seizure because Defendant never submitted to a show of authority. When police do not physically apprehend a person, the person must submit to a show of police authority for that person to be seized. *Hodari D.*, 499 U.S. at 626. If police make a show of authority and the suspect does not submit, there is no seizure. *Id.* Furthermore, there must be submission in a meaningful sense. *United States v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000). Mere "momentary compliance" does not constitute submission.

*Id.*

Again, *Brown* is distinguishable. *See* 448 F.3d at 243-44. There, in response to police demands, the suspect turned to face a police vehicle and put his hands on the hood of the vehicle. *Id.* As the officer began to pat down the suspect, a struggle ensued and the suspect attempted to flee. *Id.* The Third Circuit found that the suspect submitted when he placed his hands on the car in response to a police order, and that this initial submission was not undercut by a subsequent attempt to flee. *Id.* at 246. Thus, the police officer explicitly ordered the suspect to put his hands on the police vehicle so that the officer could pat him down, and the suspect submitted by following the orders. *Id.*

Here, Officer Tavarez never ordered Defendant to do anything. When Defendant raised his hands, it was not at the direction of the police officers. Rather than constituting a gesture of submission, Defendant's raising of his arms was a diversionary tactic, designed to divert the officer's attention and stall for time as Defendant assessed flight options.

Furthermore, unlike in *Brown,* Defendant fled mere moments after raising his hands to head level, which is not a full raising of the arms. In *Brown,* a good amount of time had to have elapsed as the suspect turned towards the police vehicle, put his hands on the hood of the car, and allowed the officer to approach him and then pat him down. Officer Tavarez testified that Defendant fled about two seconds after partially raising his arms. Therefore, there was no meaningful submission.

The facts of this case are more analogous to those in *United States v. Valentine*, where the Third Circuit found no submission. *See* 232 F.3d at 359. There, police officers approached a suspect who was walking away from them, and ordered him to stop, turn around, and put his

6

hands on the police vehicle. *Id.* at 353. The suspect turned towards the officers and responded, "Who, me?" before charging towards the officers in an effort to flee past them. *Id.* Valentine claimed that he also gave his name to the police before he attempted to flee. *Id.* at 359. The court ruled that, even if it accepted Valentine's version, he was not seized before he attempted to flee because his conduct constituted "momentary compliance" and not submission. *Id.* The court ruled that "[e]ven if Valentine paused for a few moments and gave his name, he did not submit in any realistic sense to the officer's show of authority, and therefore there was no seizure" until after he attempted to flee. *Id.*

Defendant's partial raising of his arms as an evasive gesture and not in response to any request by Officer Tavarez demonstrates that Defendant did not even momentarily comply, much less submit, before he attempted to flee. Because there was neither a show of police authority nor submission, Defendant was not seized before he attempted to flee. The seizure occurred only after the police officers used physical force to subdue Defendant following the foot chase.

**B.     At The Time Of The Seizure, The Police Officers Had Reasonable, Articulable Suspicion To Stop And Conduct A Pat-Down Of Defendant.**

Defendant alleges that the police officers violated his Fourth Amendment rights, which prohibits "unreasonable searches and seizures." *See* U.S. Const. amend. IV. Generally, for a search to be reasonable under the Fourth Amendment, it must be conducted pursuant to a warrant based on probable cause. *United States v. Robinson*, 305 F.3d 164, 167 (3d Cir. 2002). However, the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), recognized an exception to the warrant requirement. "An officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is

afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30). Here, when Defendant was eventually seized after the foot chase, the police officers had reasonable, articulable suspicion that criminal activity was afoot.

    The police officers corroborated virtually every aspect of the tip. The suspect was wearing the clothes that were described and was present in the location provided by the tipster. This alone would not have given the police officers reasonable, articulable suspicion. *See Florida v. J.L.*, 529 U.S. 266 (2000) (stating that an anonymous tip that a person is carrying a gun, even where the police find a suspect in the location and fitting the description given by the tipster, without more is insufficient to create reasonable, articulable suspicion). However, other evidence supported a reasonable, articulable suspicion. Officer Tavarez testified that the incident occurred in a high crime area, which is "among the relevant contextual considerations in a *Terry* analysis." *See Wardlow*, 528 U.S. at 124. Officer Tavarez also observed the crucial piece of evidence, the handgun, when Defendant raised his arms. This, especially in conjunction with Defendant's suspicious and evasive gesture and oral statement, "Ain't nothing going on here," created reasonable and articulable suspicion that Defendant did not have a permit for the gun. Officer Tavarez would have been justified at that point in making a *Terry* stop to ascertain whether Defendant had a permit to carry the weapon.

    Defendant's flight from the police officers is another piece of evidence that gives rise to reasonable, articulable suspicion. Unprovoked flight from police in a high-crime area, given the totality of the circumstances encountered by the officers, gives rise to reasonable suspicion that the individual was engaged in criminal activity and justifies a stop. *See id.* at 124-25. Because a seizure occurred only after Defendant's attempt to flee, the flight can be used in the reasonable

suspicion analysis.  *See Brown*, 448 F.3d at 245.  Here, Defendant attempted to flee from Officer Tavarez without provocation, supporting a reasonable, articulable suspicion that Defendant was engaged in criminal activity that involved a gun.  Taken as a whole, the evidence therefore demonstrates that the police officers had a reasonable, articulable suspicion to stop and conduct a pat-down search of Defendant.

### C.     The Police Officers Had Probable Cause To Arrest Defendant.

The police are permitted to arrest a person without first obtaining a warrant when they have probable cause to believe that the person has committed or is committing a crime.  *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Id.* (citing *Maryland v. Pringle*, 423 U.S. 411, 417-424 (2003)).  Here, there was probable cause to arrest Defendant.

After Defendant was subdued following his attempt to flee and the police officers conducted a lawful pat-down, they recovered the concealed, loaded handgun from the suspect's pocket.  They did not find any permit to carry the weapon on the Defendant's person.  Once he was identified, they discovered that Defendant had three prior felony convictions and was not licensed to carry a gun.  From these facts, the arresting officers drew the reasonable conclusion that Defendant was in unlawful possession of a firearm, and had probable cause to make a warrantless arrest.

## III.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is denied.  An order follows.